SOUTHERN PINE COMPANY v. TIMOTHY L. PIGOTT.

[47 South. 381.]

1. STATUTES OF LIMITATIONS. *Suits for land. Code 1857, arts. 1, 2, 3, 4. pp. 398, 399; Code 1871, §§ 2147, 2148, 2149, 2150. Ran against state. When suspended. Laws 1862, ch. 10, p. 78. Civil war, when it ended. Laws 1877, ch. 49, p. 82.*

The ten years' statutes of limitation against suits for the recovery of land, Code 1857, arts. 1, 2, 3, 4, pp. 398, 399, and Code 1871, §§ 2147 2148 2149 and 2150 ran against the state from November 1 1857, when the code of that year became operative, until January 24, 1877, when the act (Laws 1877, ch. 49, p. 82) prohibiting it from so doing was approved, excepting the period during and after the late civil war when the running of the statutes ·were suspended by act of December 31, 1862 (Laws 1862, ch. 10,

p. 78) from its date until (April 2, 1867) twelve months after the end of the civil war; the president's proclamation declaring the war ended being dated April 2, 1866. *Wiggle v. Owen*, 45 Miss., 691; *Dixon v. Cook*, 47 Miss., 220; *Traweek v. Kelly*, 60 Miss., 652.

2. SAME. *Actual adverse possession. Facts held not to break continuity.*

Where an adverse occupant of land conveyed the same to another, the vendee going into possession as the vendor went out, and shortly thereafter the sale was verbally rescinded and the original occupant at once resumed possession and claimed the land adversely to the vendee and all others, more than ten years elapsing between the beginning of his first occupancy and the bringing of the suit, there was not such break in the adverse possession as to render it unavailing in a suit to confirm title against one not claiming under the verbally rescinded title of the vendee.

HON. THADDEUS A. WOOD, Chancellor.

Pigott, appellee, was complainant in the court below; and the Southern Pine Company, a corporation, and another, appellants were defendants there. From a decree in complainant's favor confirming his title, the Southern Pine Company appealed to the supreme court.

The opinion of the court states the facts. The appellee claimed the land in the suit by adverse possession against the state, insisting that the statute of limitations ran against the state from November 1, 1857, when the Code of that year became operative, until January 24, 1877, when the act prohibiting it from so doing (Laws 1877, ch. 49, p. 82) was approved. The appellant's claim to the land was under a chain of title, beginning with a patent from the United States to the state of Mississippi, including a deed from the state to an individual and successive conveyances, the last one being to the appellant.

*W. J. Gex,* for appellant.

It is well established that, in suits to remove clouds from land titles, the complainant must show a valid title to the land, such title to be either legal or equitable. *Boyd v. Thornton,* 13 Smed. & M. 338; *Toulmin v. Heidelberg,* 32 Miss. 268; *Huntington v. Allen,* 44 Miss. 654; *Hardy v. Noonan,* 51 Miss. 166; *Grif-*

*fin v. Harrison,* 52 Miss. 324; *Jones v. Rogers,* 85 Miss. 802. 38 South. 742.   And if the complainant has failed to show a. valid title in himself to the property, his cause must fall, for he· cannot recover on the weakness of his adversary's title.   From the evidence in this case it is indisputable· that the appellee, Pigott, has failed to establish such title in himself as will legally· uphold his claim to relief.

It is certain that the deed from Pigott to Ryals, which is an absolute conveyance upon its face, conveyed both the legal and equitable title to Ryals, and that Pigott could never introduce any evidence to show that such conveyance was a' mortgage. Code 1880, § 1299; *Clearman v. Cotton,* 66 Miss. 467, 6 South. 156; *McAllister v. Mitchener,* 68 Miss. 678, 9 South. 824; *Mason v. Grant,* 21 Me. 160; *Parker v. Kane,* 4 Wis. 165.

A deed cannot be rescinded by oral agreement, so as to revest title in the grantor.   *Craig v. Craig,* 90 Ind. 215; *Maxwell v. Wallace,* 95 N. C. 251.

*Mounger & Mounger,* for appellee.

The court below, on the law and the facts, found that the complainant, Pigott, was entitled to the relief prayed for, and this court will not now disturb such finding. ·

.It should be borne in mind that the appellant concedes that the title to the land was in appellee's father until the early part of the year, 1886, and this necessarily must result in a further concession that the title had ripened in him in and before the year 1877.   Hence it must be presumed that the state of Mississippi did not have title to the land when it undertook to patent it in 1883, to the party from whom, through subsequent and successive conveyances, appellant deraigns its alleged title.   Appellant holds no deed of conveyance from Ryals, and Ryals is not a party to this suit.   Therefore, the chancellor correctly found in appellee's favor.

But, for another and additional reason, the chancellor correctly decided in appellee's favor. It was appellee's contention in·

the court below, and the court so held, that the deed from appellee's father to Ryals did not pass the equitable title to Ryals, but that, instead, the equitable title remained in appellee's father. The evidence shows that the consideration of said deed was to be $250, and that $50 was paid through Ryal's delivery of one yoke of oxen of that value, and that Ryals promised to pay, at some later season, the balance of $200; that appellee's father placed Ryals in possession of the land, but that Ryals remained thereon only for one year, when, becoming dissatisfied with the title, he surrendered the title back to appellee's father and received in return one ox in lieu of the yoke of oxen mentioned; that Ryals never thereafter made any claim upon the land, and appellee's father never made any claim against Ryals for purchase price unpaid; and that appellee's father was thereafter continuously in possession of the land, conveying it, shortly before his death, to his wife, from whom, through a succession of conveyances, the title passed to appellee.

From the facts shown in evidence the chancellor would have been justified in finding that the legal and equitable title to the land was vested in William Pigott, appellee's father, in either or both of two ways, to-wit: (1) That said title was revested in William Pigott by means of a foreclosure *in pais* of Pigott's equitable lien for the purchase price of the land; this foreclosure taking place when Ryals delivered the land back to Pigott and requested that Pigott, in turn, refund to him, Ryals, the payment he had made thereon, which was done. *Railroad Co. v. Ragsdale,* 54 Miss. 200; *Lucas v. American, etc., Mortgage Co.,* 72 Miss. 366, 16 South. 358. (2) That the title became revested in appellee's father and those claiming under him, thereafter, by virtue of the fact that, after Ryals re-delivered the land, appellee's father, and his grantees were in actual, notorious, adverse and peaceable possession of the land for more than ten years, as against the world in general. *Ford v. Wilson,* 35 Miss. 512; *McCaughn v. Young,* 85 Miss. 294, 37 South. 830.

Calhoon, J., delivered the opinion of the court.

This litigation arises upon a bill filed by appellee, Pigott, to remove, as a cloud upon his title, a claim of appellant. The proceedings show that the father of Pigott was the owner of the land in controversy. His ownership resulted from more than ten years' adverse possession on the part of himself and those under whom he claims. His title so became perfect because of his adverse possession against the state of Mississippi, against which the statute of limitations, save when suspended by act of December 31, 1862, was in operation between the time the code of 1857 became operative and the approval of the act of January 24, 1877, prohibiting the running of the statute against the state. The appellant's counsel very frankly concedes this, but adroitly seeks to break his fall because of matters now to be set forth.

The father of appellee conveyed the land very shortly before his death to his wife, and the appellee claims under a succession of conveyances which would give him a perfect title, but for the matter to be presently shown. Pending the ownership, the appellee's father sold the land for a consideration of $200, to be paid, and the delivery of two oxen, delivered by Ryals, his vendee; and, pursuant to this sale, Ryals was put in possession by Pigott, the vendor, but remained so in possession only about a year, when he became uneasy about his title, and it is plain that there was an oral rescission of this sale, and the vendor, Pigott, again took possession of the land under this decision. This was in 1886. As part of the rescission, one of the oxen was restored to Ryals, and Ryals never paid any of the consideration, and never thought he owed any, and none was ever expected by the vendor. Ryals never paid any of the taxes on the property; but Pigott and his successive vendees paid all of them continuously up to the time this bill was filed, in September, 1906. When the vendor retook possession, he took it adversely to Ryals, with the perfect knowledge of Ryals, and held possession of it up to the time of his death, subsequent to which the appellee, through him-

·self and his vendors, claimed to own it, as was known to Ryals, who never claimed it, and exercised the rights of ownership, and had actual possession of it, as they claim, ever since.

The appellant never had any sort of connection whatever with Ryals' title, but it bases its claim on the fact, as counsel say, that the possession of the Pigotts was abandoned before the ten years elapsed, and during this abandonment there was no actual possession. It must be borne in mind that for several years after this resumption of possession the land was actually held adversely to Ryals and to the whole world by the owners, either in person or through their tenants. We think there was evidence to sustain the decree of the chancellor, and to warrant the belief that there was in fact such adverse possession, by the exer·cise of actual ownership and possession, and that, after the fences were burned, and no one lived on the place, by the claim ·of ownership and the exercise of such acts of ownership in reference to the land for more than ten years, as constituted adverse possession. Besides, evidence is not wanting that there was actual possession by the parties, or their tenants, for the full period of ten years. At any rate, we are not disposed to re·verse the chancellor on facts which he believed. ....

*Affirmed.*